```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/2019
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARNEY HABLE,
                         Plaintiff,

-against-

METRO-NORTH COMMUTER RAILROAD,
                         Defendant.

18-cv-1460 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiff Barney Hable ("Hable" or "Plaintiff") commenced this action against Defendant Metro-North Commuter Railroad ("MNCR" or "Defendant") on February 17, 2018. (*See* Compl., ECF No. 1.) Plaintiff asserts one claim under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), alleging that Defendant negligently failed to ensure that his work environment was reasonably safe.

    Presently before the Court are the parties' pre-trial motions *in limine*. For the following reasons, the Defendant's motion is GRANTED in part and DENIED in part and Plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from the Complaint. Hable was an employee of MNCR, working as a Track Foreman. (Compl. ¶ 3.) On March 3, 2015, MNCR assigned Hable to clear snow at the Inlet to IBM Switch ("IBM Switch"), which is located near the intersection of Cliff House Land and River Edge Drive in Poughkeepsie, New York. (*Id.* ¶¶ 10, 15.) While at the entrance of the switch, Hable slipped and fell, injuring his right shoulder and aggravating his back. (*Id.* ¶ 10.) Specifically, Hable maintains that he suffered a right rotator tear and right brachial tendon tear, as well as aggravated his back functions. (*Id.* ¶ 12.)

    Hable contends that MNCR's negligence and carelessness caused his injuries.

1

(*Id.* ¶¶ 11, 15.) Suing under FELA, he maintains that MNCR failed to (1) provide him a reasonably safe place to work; (2) warn him of slippery conditions at the IBM Switch; (3) provide access to the IBM Switch; (4) clear ice and snow leading to the IBM switch; (5) inspect and maintain the access road to the IBM Switch; and (6) enact and enforce safety rules, regulations, procedures and practices. (*Id.* ¶ 15(a)-(f).) Defendant denies liability, claiming that Plaintiff's injuries were his fault. (ECF No. 7 ¶¶ 8, 11-12.)

## LEGAL STANDARD

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 176–77 (S.D.N.Y.2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). An *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, No. 09–CR–1153 (MEA), 2011 WL 1431985, at *1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

## DISCUSSION

In anticipation of the upcoming trial, each party has submitted a motion *in limine*. Plaintiff's motion seeks to preclude Defendant from introducing evidence of any surveillance, surveillance reports, and/or testimony concerning such surveillance. (Pl.'s Mot. *in Limine* ("Pl. Mot."), ECF No. 23.) Defendant asks this Court to (1) preclude Plaintiff from offering evidence of any causally-related injury other than those set forth in the Complaint; (2) preclude Plaintiff from offering evidence or argument related to past wage loss other than his net economic loss; (3)

2

preclude Plaintiff from making any claim of future economic loss; (4) discount to present value any award for future pain and suffering; (5) preclude Plaintiff from suggesting to the jury any specific non-economic damage figures; and (6) preclude any claim for past and future medical costs. (Def.'s Mot. *in Limine* ("Def. Mot."), ECF No. 24.)

The Court addresses each party's motion in turn.

I. **Surveillance Evidence**

Plaintiff's motion focuses solely on surveillance footage, as well as accompanying reports and testimony, related to the March 3, 2015 incident. (Pl. Mot. 1.) Plaintiff offers four bases for preclusion: (1) Defendant failed to produce complete unedited videos of surveillance videos during discovery; (2) Defendant did not produce any requested invoices of bills related to surveillance; (3) Defendant has not specified what portions of the videos it plans to introduce at trial; and (4) Defendant has not identified an investigator or listed any such person in the Joint Pre-Trial Order (ECF No. 22.). (*Id.*) At the heart of Plaintiff's request is his skepticism about whether Defendant has, in fact, provided full, unredacted copies of its surveillance footage.

Defendant, however, disputes Plaintiff's characterization of the surveillance video it produced. (Def.'s Opp'n to Pl.'s Mot. *in Limine* (Def. Opp.), ECF No. 26, at 2.) Defendant has also (1) indicated that it has produced the requested surveillance invoices "simultaneously with [its] opposition," and (2) identified the witness it intends to offer to authenticate its surveillance evidence. (*Id.* at 2-3.) After a review of the parties' submissions, this Court finds no basis to impose the drastic remedy of entirely precluding Defendant from offering surveillance evidence at trial. Nevertheless, certain remedies are appropriate at this late juncture.

Plaintiff's basis for outright preclusion of the surveillance video at trial is essentially grounded in Rules 26(e) and 37(c) of the Federal Rules of Civil Procedure. Rule 26(e) states, in

3

relevant part, that:

> [a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Fed. R. Civ. P. 26(e)(1)(A). And under Rule 37(c), a party's failure to disclose or supplement a disclosure may preclude it from offering the undisclosed evidence at trial, unless the failure was "substantially justified or is harmless." *Id.* 37(c)(1).

Preclusion of evidence is a "drastic remedy" that "should be exercised with discretion and caution." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004). Indeed, a "district court has wide discretion in punishing failure to conform to the rules of discovery." *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988). To that end, preclusion often should "only be applied 'in those rare cases where a party's conduct represents *flagrant bad faith* and *callous disregard*'" for its discovery obligations. *Grdinich v. Bradlees*, 187 F.R.D. 77, 79 (S.D.N.Y. 1999). In evaluating whether to preclude evidence, courts will seek guidance from the following four factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 (AJN), 2015 WL 1402049, at *22 (S.D.N.Y. Mar. 25, 2015) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)).

Here, Plaintiff does not allege that Defendant outright failed to produce all surveillance footage. Rather, Plaintiff's main claims are that (1) it has not received all surveillance videos from Defendant, namely the second and third video discs from the surveillance video set (Pl. Mot. 2; Pl. Reply, ECF No. 32, at 2.), and (2) there are discrepancies related to Defendant's disclosures that seemingly call into question the discovery produced by Defendant. (Pl. Mot. 2-3; Pl. Reply 2-3.)

As an initial matter, applying the above-discussed factors, the Court concludes that preclusion is warranted for any surveillance footage contained in video discs two and three. To be sure, it is unclear from the parties' submissions what importance (if any) the footage found in these discs may have at trial, making prejudice difficult to discern. Still, Defendant has not responded to Plaintiff's claim that it failed to disclose those discs, and with trial scheduled in just under two weeks, continuance is not a realistic option. *See In re Gen. Motors LLC Ignition Switch Lit.*, No. 14-MD-2543(JMF), 2017 WL 2880882, at *2 (S.D.N.Y. July 5, 2017) (noting that defendants' failure to "proffer a legitimate explanation" for discovery non-compliance, as well as the trial's imminence, warranted preclusion of evidence). Given the absence of a response by Defendant to this issue, the Court tentatively GRANTS Plaintiff's motion to the extent it covers surveillance discs two and three.

The Court, however, will not entirely preclude Defendant from offering surveillance evidence at trial. Even assuming Plaintiff is entitled to any and all unedited surveillance footage, Plaintiff does not actually maintain that he has not received the requested surveillance footage. Instead, he hypothesizes that there is malfeasance afoot based on discrepancies he has identified in the video metadata and surveillance invoices he has received. For its part, however, Defendant has represented to Plaintiff, and now the Court, that the surveillance footage provided is "complete" and "without redaction," and it is plainly noted that it will offer "M. Spector" as its surveillance witness.[1] (Def. Mot. 2-3.) Further, as both parties concede, Defendant has made

---

[1] Plaintiff raises concerns regarding the Defendant's representation that "M. Spector" would be called as its authenticating witness. (Pl. Reply 2.) For example, Plaintiff questions why he was not identified as a witness in the Joint Pre-Trial Order, and queries why certain surveillance reports were signed by other individuals. At this juncture, the Court views these concerns as more appropriately raised during trial as basis to challenge authenticity and foundation. In any event, the Court preliminarily concludes that any failure to identify M. Spector is harmless considering his appearance on surveillance logs produced by Defendant. Moreover, as Defendant points out, Plaintiff seemingly did not request the name of any investigator during discovery. The Court thus agrees with Defendant that any reliance on cases such as *Green v. Metro-North R.R. Co.*, No. 3:04CV2174(RNC), 2006 WL8446191, at *2 (D. Conn. Sept. 19, 2006) is misplaced.

additional disclosures of surveillance footage, as well as the surveillance invoices, in response to Plaintiff's initial motion, which Plaintiff appears to have been able to review. (*Id.* at 2; Pl. Reply 1, 3.) Plaintiff may (and seemingly will) question the integrity of the surveillance footage. These arguments, however, are better left for a foundational challenge and/or impeachment during trial, rather than supporting complete preclusion of the evidence beforehand.[2]

In short, based on the parties' submissions and representations, the Court concludes that Plaintiff is "not being subjected to trial by ambush." *See Lore v. City of Syracuse*, No. 5:00-CV-01833, 2005 WL 3095506, at *2 (N.D.N.Y. Nov. 17, 2005) (preclusion of witness not warranted where, although plaintiff "failed to adhere to the letter of the discovery rules" regarding witness disclosures, "defendants were sufficiently aware of the existence and relevance of the persons in question"). The Court will accordingly DENY, at this time, the remainder of Plaintiff's motion to preclude surveillance footage at trial. Nevertheless, to help clarify and placate any remaining concerns, the Court directs Defendant to provide an affidavit, sworn under penalty of perjury, indicating it has provided complete and unedited disclosures to Plaintiff and confirming that "M. Spector" will be testifying as the "Representative[] from Access Investigations" referred to in the Joint Pre-Trial Order (ECF No. 22 at 9).

## II. Proof of Injuries

Defendant asks this Court to limit the types of injuries that Plaintiff may adduce at trial. (Def. Mot. 3-4.) Specifically, Defendant maintains that Plaintiff should only be permitted to discuss injuries mentioned in the Complaint. (*Id.* at 4.) Defendant argues that this result is

---

[2] To the extent Plaintiff is insinuating foul play, he should make a spoliation claim under Rule 37(b). Plaintiff, however, has not claimed at this point that the sought-after evidence "actually existed and was destroyed [or altered]" with the "culpable state of mind." *See Creighton v. City of New York*, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *14 (S.D.N.Y. Feb. 14, 2017). For this reason, in the absence of a spoliation claim, the Court declines to entertain allegations of Defendant's malfeasance.

6

warranted due to Plaintiff's failure to detail the "nature and extent" of his injuries in response to interrogatory requests, as it claims is required under Federal Rule of Civil Procedure Rule 26(a)(1)(A). (*Id.* at 3.) The Court disagrees.

Notwithstanding Rule 26's requirements, Local Civil Rule 33.3 limits interrogatory responses to "those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents."[3] N.Y. Dist. Ct. Rules S.&E.D.N.Y., Local Civ. Rule 33.3(a). To this end, courts have consistently held that Local Rule 33.3 "presumptively exclude[s]" information such as "descriptions of the nature and extent of injuries." *Kunstler v. City of New York*, No. 04CIV1145(RWS)(MHD), 2006 WL 2516625, at *5 (S.D.N.Y. Aug. 29, 2006), *adopted by* 242 F.R.D. 261 (S.D.N.Y. 2007); *accord Nunez v. City of New York*, No. 11 Civ. 5845(LTS)(JCF), 2013 WL 2149869, at *8 (S.D.N.Y. May 17, 2013) ("A list of the plaintiffs' alleged injuries and treatment is presumptively excluded by Local Civil Rule 33.3, and the defendants acknowledge that they will have to review the medical records and depose the plaintiffs in any event."); *see also Hudson v. Asset Prot. & Sec. Servs. LP*, No. 10 Civ. 3287(LTS)(KNF), 2011 WL 6315188, at *2 (S.D.N.Y. Dec. 15, 2011) (rejecting defendants' assertion that plaintiffs' refusal, under Local Rule 33.3, to respond to interrogatory request seeking a description of "any, all and each injury [plaintiff] claim[ed] to have sustained" warranted summary judgment, particularly because defendant had not demonstrated

---

[3] Defendant's reliance on *Forth Worth Employees' Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99 (S.D.N.Y. 2013) is misplaced. In that case, the defendant had refused to respond to interrogatories under the assumption that plaintiffs' interrogatory request was a "contention interrogatory" that was limited by Local Rule 33.3(c). *Id.* at 110. It was in that context that the court the made clear that the availability of contention interrogatories does not obviate the need to produce documents that will support a party's claims. *Id.* Here, Defendant maintains that the medical records provided were voluminous, but it does not actually contend that Plaintiff has *withheld* these documents. In any event, *Forth Worth* does not speak Local Rule 33.3(a)'s presumptive limitation on interrogatory responses, which goes to the heart of Defendant's challenge.

any prejudice resulting from Plaintiff's failure to respond). The rationale underlying this rule is that this information is "more efficiently obtained through . . . pertinent medical records and through depositions." *Kunstler*, 2006 WL 2516625 at *5.

These legal principles notwithstanding, Defendant argues that it "should not be prejudiced by culling through thousands of pages of medical records" to ascertain the nature and extent of Plaintiff's injuries (Def. Mot. 4.) Instead, Defendant maintains, a response to its interrogatories was the most "practical method" for obtaining this "discrete information." (Def. Reply 3.) But Plaintiff avers that it had provided a list of "treating physicians," which Defendant ultimately never deposed. (Pl.'s Opp'n to Def.'s Mot. *in Limine* ("Pl. Opp."), ECF No. 25, at 6.) Further, Plaintiff notes that Defendant did not seek leave to serve contention interrogatories on the issue. (*Id.*) The Court accordingly concludes that Defendant has not made the requisite showing, at this time, of prejudice necessary to challenge Plaintiff's non-disclosure of injuries in his interrogatory response. Indeed, although itt maintains that Plaintiff's production of medical records "exceed the alleged injuries to his right shoulder," such that he should have "supplement[ed]" his responses, Defendant does not ultimately respond to Plaintiff's contention that it failed to take a deposition of any treating physician or to even serve contention interrogatories. Simply put, Defendant has failed to sufficiently demonstrate that it could not have obtained the relevant medical facts at issue through avenues other than interrogatories. *Kunstler*, 2006 WL 2516625 at *5.

As Defendant offers no other basis for preclusion, the Court DENIES Defendant's motion to preclude Plaintiff from offering proof of any injuries other than those detailed in the Complaint. Defendant, however, may seek leave to raise this point again during trial.[4]

---

4      Although Defendant does not appear to challenge Plaintiff's intention to call his treating physicians as witnesses, the Court also notes that it sees no basis to preclude Plaintiff from offering this testimony in support of his case. It is well established that treating physicians may be called at trial "without any requirement of a written report," *Ramsay v. Nat'l R.R. Passenger Corp*, No. 12cv1999(MHD), 2015 WL

**III. Future Economic Loss**

Defendant seeks to preclude Plaintiff from offering any evidence of the value of future earnings in support of his future economic loss claim because any such claim "is purely speculative." (Def. Mot. 5-6.) Defendant maintains that plaintiffs, in general, may not pursue recovery for speculative damages and cannot otherwise establish future economic loss without an expert. (*Id.* at 5 (citing *Homen v. United States*, No. 00 CIV. 3883(RWS), 2002 WL 844347 (S.D.N.Y. May 2, 2002).) Plaintiff, however, explains that he does not need to rely on experts to establish future economic loss. *See Leo v. Long Island R.R. Co.*, 307 F.R.D 314, 328-29 (S.D.N.Y. 2015) (noting that plaintiff was able to calculate his loss of future income using "the current collective bargaining agreement [] and the pay data from [his] personnel file"). The Court agrees. Indeed, Defendant does not point to any authority that specifically requires Plaintiff to use expert testimony to introduce evidence of future economic loss, nor has this Court identified any case that stands for that sweeping proposition.[5]

As to the nature of the proffered testimony, Plaintiff represents that he plans to introduce his personal experience as an employee, his wage rates, his tax rate, and his planned work life expectancy and will offer to the jury work life expectancy table calculations and mortality rates. (Pl. Opp. 7-9.) Thus, on its face, Plaintiff's expected method of establishing future lost wages

---

2168062, at *9 (S.D.N.Y. May 7, 2015); *accord Kendall v. Metro-North Commuter R.R.*, No. 12 Civ. 6015(DLC), 2014 WL 1885528, at *6 (S.D.N.Y. May 12, 2014) ("Here, plaintiff disclosed her treatment providers in her Rule 26 submission and provided records from her treating sources. She was not required to provide more information regarding her medical and psychotherapeutic treatment and the substance of the anticipated medical testimony."), and Plaintiff has proffered his full Rule 26(a)(2)(C) disclosure detailing about what his provider(s) would testify. (Pl. Opp. 3-4.) The Court, of course, reminds Plaintiff that any testimony by his treating physicians must be "limited to opinions they actually formed during the course of treating" him. *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 631 (S.D.N.Y. 2012).

[5] In fact, *Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, No. 02Civ.7545 (RMB)(JCF), 2006 WL 288353 (S.D.N.Y. Feb. 6, 2006)—which Plaintiff relies on to maintain that future economic loss claims require expert testimony—stands for the opposite proposition. Although the court there did opine that plaintiff in that case would "not be able to prove lost future profits without evidence that such damages are reasonably certain and directly traceable to the alleged breach of contract," the court nevertheless made it clear that "[plaintiff] [was] *capable of presenting a claim for compensatory damages without expert testimony.*" *Id.* at *2.

does not appear to implicate the more speculative testimony at issue in the cases referenced by Defendant. *See, e.g.*, *Homen*, 2012 WL 844347 at *6 (plaintiff claimed $10 million in damages for pain and suffering even though his "actual injuries for which he could be entitled to compensatory damages [were] de minimis"); *Slade v. Whiteco Corp.*, 811 F. Supp. 71, 76 (N.D.N.Y. 1993) (concluding that jury had reached "seriously erroneous result" where plaintiff, who had sustained severe permanent brain damage and had become a quadriplegic at the age of three, premised her future economic loss figure on the hypothetical "assumption that [she] ha[d] a life expectancy of 67 years" and "that her mother [who was otherwise healthy] . . . would die tomorrow"); *Saleeby v. Kingsway Tankers, Inc.*, 531 F. Supp. 879, 889-91 (S.D.N.Y. 1981) (rejecting jury's verdict premised on, among other things "fatally defective" testimony that was "devoid of any factual support" for the position advanced by plaintiff).

In sum, Defendant's challenge to Plaintiff's evidence of future economic loss is, at best, premature. Of course, should the evidence and testimony adduced at trial prove to be overly speculative, the Court will certainly fashion appropriate limiting instructions to the jury, who is otherwise well equipped to fashion awards premised on future lost earnings. *See Sinclair v. Long Island R.R.*, 985 F.2d 74, 78-79 (2d Cir. 1993) ("The jury should have been instructed that, if Sinclair sustained his burden of proof, it could make an award for future lost earnings."). For now, however, the Court DENIES Defendant's motion to preclude claims of future economic loss.

**IV. Specific Damage Figures**

Defendant argues that Plaintiff "should be prohibited from suggesting any damage ward figures in argument to the jury." (Def. Mot. 8.) Plaintiff, in response, has represented that it "does not intend to suggest to the jury a dollar figure of pain and suffering." (Pl. Opp. 10.) As there is

no dispute on this issue, the Court GRANTS Defendant's motion as to any reference by Plaintiff's counsel to pain and suffering damages

Plaintiff nevertheless contends that "he is free to present full damage award suggestions for past and future economic losses." (*Id.* at 10.) Although Defendant does not seem to oppose this (*see* Def. Reply at 4-5), the Court will briefly address this issue out of an abundance of caution.

The Second Circuit has "not adopted a per se rule about the propriety of suggested damage amounts." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). Instead, the decision to suggest a dollar amount "is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *See id.* Here, given that the lack of a *per se* rule about the propriety of such suggestions, the Court sees no reason—at this juncture—to prohibit Plaintiff from presenting a suggested figure for past and future economic loss. If, during trial, it becomes apparent that a suggested amount will be unduly prejudicial, the Court will set appropriate limits.

## V. Gross Wage Loss

Defendant contends that "plaintiff is only entitled to present evidence of his causally related net economic loss, including the value of any alleged lost benefits." (Def. Mot. 4.) Plaintiff responds that Defendant is essentially asking this Court to prohibit him from offering evidence of "gross wage loss" to assist in calculating net economic loss. (Pl. Opp. 6.) As Defendant correctly notes, however, it does not make mention of gross wage loss. (Def. Reply, ECF No. 37, at 1 n.1.)

There is no dispute by either party that net wage loss is the only appropriate measure of economic loss. And the parties both appear to agree that gross wage loss is appropriate evidence to admit insofar as it is necessary to calculate net wage loss. As Plaintiff does not seem to challenge the remainder of Defendant's motion, the Court will GRANT the motion. The evidence presented

by Plaintiff in this context must be causally related net economic loss and may include the value of any alleged lost benefits and evidence of gross wage loss.

## VI. Discounting Awards for Future Loss to Present Value

Defendant maintains that pain and suffering damages must be discounted to present value. (Def. Mot. 6.) In support, it cites to Second Circuit authority indicating that courts should "accept the concept of discounting awards for non-pecuniary losses." (*Id.* (quoting *Oliveri v. Delta S.S. Lines, Inc.*, 849 F.2d 742, 751 (2d Cir. 1988).) Plaintiff "accepts" this position and "will abide by such precedent." (Pl. Opp. 9.) Accordingly, the Court GRANTS Defendant's motion to discount to present value any award for future pain and suffering.

## VII. Past and Future Medical Costs

Defendant argues that, because Plaintiff has not asserted a claim for past or future medical costs, any such claim should be precluded. (Def. Mot. 8.) Plaintiff offers no response. The Court therefore deems this request as unopposed and, as such, abandoned. For this reason, the Court GRANTS Defendant's motion to preclude any claim for past and future medical costs.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in part and DENIED in part and Plaintiff's motion is GRANTED in part and DENIED in part. Consistent with this opinion, Defendant is directed to submit, by Friday, September 27, 2019, an affidavit confirming that it has provided complete and unedited surveillance disclosures to Plaintiff and that "M. Spector" will be testifying as its surveillance witness.

A final pretrial conference is scheduled before this Court on Friday, September 27, 2019 at 10:00 AM. Furthermore, trial is scheduled to begin on Monday, October 7, 2019 at 9:30 AM.

The Clerk of the Court is respectfully requested to terminate the motions at ECF No. 23 and 24.

Dated: September 24, 2019
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge